Raul TREVINO et al., Petitioners,

v.

Patrick A. TURCOTTE et al.,
Respondents.

No. B–6474.

Supreme Court of Texas.

March 15, 1978.

Rehearing Denied April 26, 1978.

Tom N. Goodwin, John E. Fitzgibbon, William C. Wright, Laredo, Day & Day, Joe Day, Fort Worth, Vela & Vela, Moises Vela, Harlingen, Downman, Jones & Musslewhite, Norman Jones, Baker & Botts, Denman Moody, Houston, Perkins, Davis, Oden & Warburton, Kenneth Oden, Alice, Lee H. Lytton, III, Corpus Christi, Rankin & Kern, Inc., H. H. Rankin, Jr., McAllen, John L. Hill, Atty. Gen., Stephen J. Wilkinson, Asst. Atty. Gen., Austin, Elmore H. Borchers,

Laredo, Harry J. Schulz, Three Rivers, for petitioners.

Wood, Burney, Nesbitt & Ryan, Frank W. Nesbitt, Corpus Christi, for respondents.

BARROW, Justice.

This is a will contest involving the 1960 will of Mrs. Sarita K. East who died on February 11, 1961. The issue presented by this appeal does not concern the actual validity of the will. It is instead whether respondents, who are the widow and six children of Edgar Turcotte, deceased, have an interest in the estate of Mrs. East which will entitle them, or some of them, to contest the will. The district court, sitting without a jury, conducted a trial on the issue of respondents' interest and entered a judgment which dismissed all respondents from the will contest on the ground that they are not interested persons within the meaning of Section 93 of the Texas Probate Code. On appeal, the court of civil appeals affirmed as to all respondents except Patrick A. Turcotte and Robert A. Turcotte. The judgment of the trial court insofar as it affects Patrick A. Turcotte and Robert A. Turcotte was reversed and remanded for trial on the merits. *Turcotte v. Trevino,* 544 S.W.2d 463 (Tex.Civ.App.—Corpus Christi, 1976). We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The factual background of this case and the long history of the litigation is fully set out in the two opinions of the Thirteenth Court of Civil Appeals. *See Turcotte v. Trevino,* 499 S.W.2d 705 (Tex.Civ.App.— Corpus Christi 1973, writ ref'd n. r. e.), and *Turcotte v. Trevino, supra.*[1] We will repeat only those facts, circumstances, and legal principles necessary for the disposition of this appeal.

Mrs. East executed one will dated December 31, 1948, and another on January 22, 1960. Four codicils were subsequently made to the 1960 will. The 1960 will was duly admitted to probate and Edgar Turcotte qualified as one of three independent executors of the estate; he served in that capacity until his death on March 18, 1963. On July 25, 1962, petitioner Raul Trevino and 39 others filed a will contest. Numerous parties intervened including Patrick A. Turcotte, individually and in his capacity as Independent Executor of the Estate of Edgar Turcotte, who intervened along with Edgar Turcotte's widow and other children on December 20, 1963. Marie Walker and her brother, Robert C. Putegnat, intervened on September 30, 1963. At one time there were over 120 contestants of the 1960 will. All contestants, with the exception of respondents, have now been finally dismissed, or have settled and agreed to probate the 1960 will.

None of the respondents is an heir at law of Mrs. East. Three of Edgar Turcotte's children, Jack, Joe an L. E. Jr., were employees of Mrs. East at the time of her death and, as such, received cash bequests under the 1960 will. None of the other respondents is a legatee or devisee under either the 1948 or 1960 wills. Respondents urge, however, that they are "interested persons" in that they are the sole heirs at law, and the only beneficiaries under the will, of Edgar Turcotte, a cousin of Mrs. East and a devisee of substantial bequests in both the 1948 and 1960 wills. In addition, Patrick and Robert Turcotte claim to be interested persons in the East estate in their own right by virtue of assignments which they acquired from Marie Walker and Robert Putegnat. Patrick Turcotte

---

1. There have been nine previous appeals involving this estate: *Kimmel v. Lytton,* 371 S.W.2d 927 (Tex.Civ.App.—Waco 1963, writ ref'd); *Alice National Bank v. Edwards,* 383 S.W.2d 482 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); *Turcotte v. Alice National Bank,* 402 S.W.2d 894 (Tex.1966); *Alice National Bank v. Edwards,* 408 S.W.2d 307 (Tex.Civ.App.—Corpus Christi 1966, no writ hist.); *Gregory v. Lytton,* 422 S.W.2d 586 (Tex. Civ.App.—San Antonio 1967, writ ref'd n. r. e.); *Corpus Christi Bank and Trust v. Alice National Bank,* 444 S.W.2d 632 (Tex.1969); *Alice National Bank v. Trevino,* 445 S.W.2d 237 (Tex. Civ.App.—Beaumont 1969, no writ hist.); *Turcotte v. Trevino,* 467 S.W.2d 573 (Tex.Civ.App. —Corpus Christi 1971, writ ref'd n. r. e.); *Turcotte v. Trevino,* 499 S.W.2d 705 (Tex.Civ.App. —Corpus Christi 1973, writ ref'd n. r. e.).

purchased a total of ten percent of Walker's and Putegnat's interests "in expectancy or otherwise as an heir at law or as a beneficiary under any valid will and testament of Sarita K. East, Deceased." Marie Walker and Robert Putegnat are not beneficiaries under the 1960 will, but are beneficiaries under the 1948 will as well as remote heirs at law. Patrick Turcotte subsequently assigned ½th of his interest to Robert Turcotte.

On June 1, 1971, during the trial on the validity of the 1960 will, the trial court dismissed these same respondents from the case then pending on the ground that they were estopped as a matter of law from contesting the 1960 will. That action was reversed by the court of civil appeals and the cause remanded with instructions that the issues of respondents' interest must be tried separately and in advance of a trial on the validity of the will. 499 S.W.2d 705. This was done and, on June 26, 1975, the trial court entered a final judgment which dismissed respondents from the will contest.[2]

█ At the outset, since this is the second appeal of the case involving the issue of whether respondents are "persons interested," we must consider whether or not the first opinion of the court of civil appeals established the "law of the case." The doctrine of the law of the case is defined as that principle under which the initial determination of questions of law will be held to govern the case throughout its subsequent stages. *Kropp v. Prather,* 526 S.W.2d 283 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.). Application of the doctrine is addressed to the discretion of this Court. *Kempner v. Huddleston,* 90 Tex. 182, 37 S.W. 1066 (1896).

█ It should be recognized that neither the trial court nor the appellate court relied upon the doctrine as a basis for the judgment which is now before us. To the contrary, the second opinion of the court of civil appeals expressly stated that the rec-

ord presented by the second appeal differs materially from that presented by the prior appeal. The court observed that the type and character of the pleadings, the allegations contained therein, and the theory of the attack differed in many respects in the two trials. The estoppel in the first trial court judgment was found as a matter of law without a full development of the facts. The case was remanded for such development and the second judgment was based on findings of fact by the trial court.

The first opinion held that the trial court's judgment was erroneous and required a remand for several different reasons. By refusing the application for writ of error with the notation of "no reversible error" the Supreme Court approved only the result reached by the court of civil appeals and not necessarily all the statements as to the law in the opinion. *Fant v. Howell,* 547 S.W.2d 261 (Tex.1977).

We conclude that the first opinion did not establish "the law of this case" on the issue of whether or not respondents are "persons interested."

After the trial on the interest of respondents, numerous findings of fact and conclusions of law were made by the trial court. Essentially, the trial court ruled that all of the respondents were estopped to contest the 1960 will because Edgar Turcotte, from whom the respondents received an interest in the East estate, would be estopped to contest the will in that he accepted and retained substantial benefits under the 1960 will. The court further held that Patrick Turcotte and Robert Turcotte were not "persons interested" in the estate by virtue of the assignments.

█ The court of civil appeals affirmed the ruling that respondents were estopped to attack the 1960 will in their capacities as devisees and legatees of Edgar Turcotte. We affirm that holding. It is a fundamental rule of law that a person cannot take any beneficial interest under a will and at

2. Since there were no other contestants in the case, the trial court entered judgment dismissing the will contest.

the same time retain or claim any interest, even if well founded, which would defeat or in any way prevent the full effect and operation of every part of the will. *Miller v. Miller,* 149 Tex. 543, 235 S.W.2d 624 (1951); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935); *Lindsley v. Lindsley,* 139 Tex. 512, 163 S.W.2d 633 (Tex.Com.App. 1942, opinion adopted); *Dunn v. Vinyard,* 251 S.W. 1043 (Tex.Com.App.1923, judgmt adopted); *Smith v. Negley,* 304 S.W.2d 464 (Tex.Civ.App.—Austin 1957, no writ hist.). Respondents attempt to avoid this rule of law by arguing that the court of civil appeals' holding is without support by proper pleading in the probate court, without support of credible evidence, and is contrary to law under the facts of this case.

■ Respondents contend that the pleadings in the probate court were not sufficient to raise the issue of estoppel by acceptance of benefits in the district court since not all elements of estoppel, specifically acceptance *with knowledge,* were pled. It is settled that on appeal to the district court from probate matters which have had their origin in the county court, the jurisdiction of the district court is appellate only and, therefore, the issues which are tried de novo in the district court must be confined to issues raised by the pleadings and the evidence in the county court. *Holliday v. Smith,* 422 S.W.2d 791, 795 (Tex.Civ.App.— Corpus Christi 1967, writ ref'd n. r. e.); *Olds v. Traylor,* 180 S.W.2d 511, 518 (Tex. Civ.App.—Waco 1944, writ ref'd). As pointed out by the court of civil appeals, the *issue* in both the county and district courts in this case was whether respondents were estopped from asserting their interest in the East estate. The same *ground* of estoppel—acceptance of benefits—was pled in both courts. The pleadings in the district court which were amended to allege that the respondents were estopped because Edgar Turcotte had accepted benefits under the will *with knowledge of his rights* did not therefore inject a new issue into the proceedings or even enlarge the ground of estoppel raised in the probate court.

■ Respondents further assert there was no evidence that, at the time Edgar Turcotte accepted benefits under the will, he knew or should have known that the will contest would be filed by others, and that such knowledge is a necessary element of estoppel. Whether or not Edgar Turcotte had knowledge of all the facts and of all his rights at the moment he accepted the benefits is immaterial to a determination that he, by his acts and conduct after acceptance, became estopped to contest the will. Clearly, there is more than a scintilla of evidence to support the finding of the trial court that Edgar Turcotte did take many of the substantial benefits to which he was entitled under the 1960 will, and that he never revoked, or intended to revoke, his acceptance. He qualified under the will as one of the independent executors of the estate of Mrs. East and performed numerous duties as such until his death on March 18, 1963. He never contested the will. To the contrary, as executor, he defended the probate of the will in court. He accepted his share of the 43,000-acre San Pablo Ranch and he partitioned same, together with the cattle and personal property thereon, with his sister, Stella T. Lytton. He made improvements on this ranch and operated it until his death. In all, he accepted and took possession of approximately $1,300,000 worth of benefits under the 1960 will. He was advised by an attorney that his acceptance under the 1960 will would preclude any claim by him for benefits under the 1948 will. He never returned or tendered a return of those properties during his lifetime. Respondents are still in possession of these properties and the income therefrom.

■ Respondents also assert that they are not estopped because the will contest was initiated by people other than themselves. They urge that since a will contest is a proceeding in rem, the adjudication of property rights in the contest could affect the rights of the Turcottes. It is therefore argued that the personal estoppel against Edgar Turcotte and his privies should be precluded as a matter of law because to bar respondents from participating as contest-

ants lacks mutuality, is prejudicial and is a denial of due process of law. We hold that the filing of a will contest by others cannot be deemed to revive the respondents' relinquished right to contest the 1960 will. Furthermore, now that all contestants of the 1960 will except the respondents have settled and no longer challenge its validity, the respondents' contentions in this vein are moot.

■ We therefore hold that there are pleadings and evidence to support the finding that Edgar Turcotte, with full requisite knowledge, elected to and did take the substantial benefits to which he was entitled under the 1960 will, and that this election was ratified by him until his death. This election and ratification is binding upon respondents in their capacity as heirs, legatees, or personal representatives of Edgar Turcotte, deceased. *Wells v. Petree,* 39 Tex. 419 (1873); *Lancaster v. Burris,* 352 S.W.2d 136 (Tex.Civ.App.—San Antonio 1961, no writ hist.); *Cunningham v. Townsend,* 291 S.W.2d 438 (Tex.Civ.App.—Eastland 1956, writ ref'd n. r. e.). The court of civil appeals did not err in holding that respondents did not have such an interest in these capacities to contest the 1960 will of Mrs. East.

■ Respondents Patrick Turcotte and Robert Turcotte also claim to be interested persons to contest the 1960 will by virtue of the assignments purchased from Robert C. Putegnat and his sister, Marie Walker, beneficiaries under the 1948 will and heirs at law of Mrs. East. The court of civil appeals reversed the trial court's finding that the assignments were invalid and rendered judgment holding Patrick and Robert Turcotte to be interested persons.

Petitioners do not question the established rule in this State that the heirs, devisees and legatees of a decedent may validly assign all or any part of their interests in a decedent's estate. *Morris v. Halbert,* 36 Tex. 19 (1871); *Geraghty v. Randals,* 224 S.W.2d 327 (Tex.Civ.App.—Waco 1949, no writ); 61 Tex.Jur.2d Wills, § 324. Neither do they dispute the rule that assignees of an heir at law have such interest in testator's will which enables them to contest its validity. Tex.Prob.Code Ann. Sec. 3(r) (1956); *Dickson v. Dickson,* 5 S.W.2d 744 (Tex.Com.App.1928, judgmt adopted). Petitioners do urge, however, that under the facts and circumstances in this case Patrick and Robert Turcotte should not be permitted to use these assignments to gain standing as "persons interested" to contest the 1960 will of Mrs. East.

The record fairly supports the conclusion that the assignments were acquired by Patrick A. Turcotte for the express purpose of acquiring an interest in the East estate which would give him standing to maintain the will contest should it be found that Edgar Turcotte and those claiming through him were estopped. This plan was undertaken after Patrick Turcotte had been advised by several attorneys that the probable estoppel of Edgar Turcotte would present at least a serious question to his intervention in the will contest. Patrick Turcotte commenced a search for an heir at law of Mrs. East or a beneficiary of the 1948 will who was not a beneficiary of the 1960 will. He learned the Putegnat family had been bequeathed $20,000 in the 1948 will and that Robert Putegnat and Marie Walker are each entitled to ⅓rd of their father's ⅙th interest in this bequest. Patrick Turcotte first offered to furnish an attorney to Robert Putegnat for a five percent share in his interest, but after learning that Putegnat already was represented by an attorney, Patrick undertook to purchase an interest in Putegnat's claim. Putegnat accepted Patrick's offer of $1,000 for a five percent share in Putegnat's claim. Putegnat also agreed to try to purchase for Patrick similar interests from other heirs at law for a commission of $100. Accordingly, Putegnat contacted his sister, Marie Walker, and her husband who agreed to assign Patrick a five percent interest in her claim for $1000. About a month later, Putegnat and Marie Walker contacted Patrick Turcotte and each assigned him an additional five percent interest for $1000 each. Putegnat was paid $400 in total commissions by Patrick for these four assignments.

Although the assignments were taken in the name of Patrick Turcotte, they were paid for with checks drawn on the Edgar Turcotte Estate Trust Account. It is reasonable to assume that Patrick intended, at one time at least, that these assignments would be owned jointly by the heirs of Edgar Turcotte in that he voluntarily assigned Robert Turcotte a 1/12th interest. Since the interests purchased by Patrick Turcotte for over $4000 would be worth only about $220 if the 1948 will is probated, the logical conclusion to be drawn is that these interests were acquired for the purpose of securing standing to maintain a will contest.

We agree with the holding of the court of civil appeals that the assignments to Patrick Turcotte are not null and void by reason of the barratry statute, violations of the Canons of Ethics of the State Bar of Texas, or any illegal conduct on his part. Patrick's offer to represent Putegnat was not pressed after he learned that Putegnat already had an attorney. Instead, negotiations were had leading to the purchase by Patrick Turcotte of the four assignments.

Therefore, the decisive question presented narrows to whether or not Patrick and Robert Turcotte, although personally estopped from contesting the 1960 will as beneficiaries of their father, may "unestop" themselves by purchasing a ten percent interest in the claims of two remote heirs of Mrs. East, claims which are inconsistent with and would defeat the interest already accepted by the Turcottes through their father. We have been unable to find a Texas case which has squarely considered this point. The court of civil appeals held that the assignees may do so and cited the following authorities in support of this holding: *Dickson v. Dickson,* 5 S.W.2d 744 (Tex.Com.App.1928, judgmt adopted); *Abrams v. Ross' Estate,* 250 S.W. 1019 (Tex. Com.App.1923, judgmt adopted); 23 Am. Jur.2d, *Descent and Distribution,* § 36 (1965). We do not find any of these authorities as controlling the disposition of this case.

The question before the court in *Dickson, supra,* was whether the right of a deceased who occupied the position of a "person interested" which would have entitled him to contest the probate of a will passed by the terms of his will or died with him. It was held that the right of action is assignable and is the subject of conveyance, and that a "person interested" means anyone who has an interest in the subject matter of the proceeding. The court did not consider or speak to the question of whether such party could assert such right when it would be inconsistent with a position the party had previously elected to adopt under a will.

In *Abrams, supra,* the contestants asserted alternate interests in the estate by claiming under the purchaser of the land in controversy at an execution sale and also under a conveyance from the grandson of testatrix. It was held that both of these interests would be affected by the probate of the will and therefore contestants were "persons interested" and entitled to maintain the contest under either claim. The court held that contestants had a right to plead both their titles in the alternative and, if either title proved to be an interest in the estate of testatrix, they were entitled to contest such probate. The court neither considered nor spoke to the question of the effect of an estoppel as a bar to one of the titles.

The final authority cited by the court of civil appeals is a partial quote from 23 Am.Jur.2d, *supra,* as follows:

". . . Estoppels, where operating against the ancestor, do not operate against his heirs as to property not inherited from the ancestor, but acquired from an independent source. Hence an heir is not bound by such an estoppel with respect to property taken by purchase, or devise, or inheritance, from one other than the particular ancestor."

This sentence relies on five cases, none of which are Texas cases. Three, *French v. McMillion,* 79 W.Va. 639, 91 S.E. 538 (1917); *Foote v. Clark,* 102 Mo. 394, 14 S.W. 981 (1890), and *Russ v. Alpaugh,* 118 Mass. 369 (1875), are very similar. In *French* the

father of the plaintiff conveyed, by warranty deed, the land he lived on and apparently owned. The land was actually owned by the grandmother of the plaintiff. The plaintiff claimed title alternatively as the heir of the father and as the heir of the grandmother. The court found that the same estoppel or warranty which would have prevented the father from claiming title to the land would also operate to prevent the plaintiff from claiming title as the heir of the father. However, the court went on to find that title was never vested in the father since he predeceased the grandmother, and that upon the grandmother's death, title passed directly to the plaintiff. The estoppel which prevented him from claiming title through the father was held not to operate to also prevent him from claiming through the grandmother.

Similarly, in *Russ* and *Foote* the estoppel which would have prevented the children from claiming title as heirs of one parent who had apparently conveyed away the land did not prevent them from acquiring the land as heirs of the other parent who, at death, actually had title. In *Oliver v. Piatt,* 3 How. 333, 11 L.Ed. 622 (1844), and *McSwain v. Griffin,* 218 Miss. 517, 67 So.2d 479 (1953), the heirs stood in the shoes of a decedent who would have been estopped from claiming title to land, but were held not to also be estopped from acquiring valid title by purchasing the land in question.

We do not believe that the quoted rule controls the situation before us in that none of the cases cited in support thereof involved a will contest. There was no heir before the court in any of those cases who was a successor in interest standing in the shoes of his ancestor to any rights or properties which were inconsistent with, or which would defeat in any manner, the property right which the heir was then claiming.

The New York case of *De Witt v. Jayne,* 222 App.Div. 674, 225 N.Y.S. 97 (1927), supports petitioners' position on this point. It

was there held that plaintiff and the other legatees under the will of plaintiff's sister, having accepted their legacies, were personally estopped from later claiming any interest in the estate of the deceased hostile to the will. Furthermore, plaintiff was held to be estopped for the same reason from asserting the claims assigned to her by the other beneficiaries under the will.

Although we have found no Texas case which considered the question of "unestoppel" in regards to a will contest, Texas courts have rejected the somewhat analogous arguments that a person may circumvent his estoppel by acquiring a chain of title unrelated to the estoppel. *See Adams v. Duncan,* 147 Tex. 332, 215 S.W.2d 599 (1948); *Doty v. Barnard,* 92 Tex. 104, 47 S.W. 712 (1898); *Waco Bridge Co. v. City of Waco,* 85 Tex. 320, 20 S.W. 137 (1892).

The question before us is not, as in *Abrams,* whether or not interests may be alternatively asserted as grounds for contesting a will; it is instead whether or not a party who is estopped by equity from contesting by way of one interest may avoid that estoppel by acquiring another interest which is not estopped. No court has so held. To so hold would make a mockery of the equitable rule of election in will contests. The rule of election and estoppel in will contests is based upon equity and public policy. It is designed to prevent one from embracing a beneficial interest devised to him under a will, and then later asserting a challenge of the will inconsistent with the acceptance of benefits.

Here respondents Patrick and Robert Turcotte are seeking to assert the relatively minute interests assigned to them in order to contest the 1960 will which their father ratified by his election. Yet their admitted purpose in invalidating such will is to recover through their father since respondents are neither beneficiaries under the 1948 will nor heirs at law.[3] In the meantime respondents have enjoyed, and continue to enjoy, the fruits of their fa-

---

**3.** Respondents prayed that the 1960 will be held for naught and that the 1948 will be probated.

ther's election in that they remain in possession of the property taken by Edgar Turcotte under the 1960 will, and have earned almost one million dollars from same. They admit that over $150,000 from the estate bank account has been spent on this contest of the 1960 will. True, respondents have pleaded that they are willing to tender back the property received by them should the 1960 will be invalidated. However, even assuming that a valid tender could be made after these many years of unqualified possession, the election to take or not to take is not the respondents' to make; it was made long ago by Edgar Turcotte. Respondents cannot now repudiate that election.

The Putegnat heirs, including Robert Putegnat and Marie Walker, as well as all other contestants, have now settled their claims and no longer desire to contest the 1960 will. Putegnat and Marie Walker have offered to pay Patrick and Robert Turcotte ten percent of the interest to be received by Putegnat and Marie Walker.

We conclude that it would be inequitable and unjust to allow Patrick and Robert Turcotte to assert standing as interested parties by virtue of the minute interests acquired through the assignments purchased for the purpose of defeating the will under which their father elected to take. Furthermore, to permit standing under such circumstances is against public policy in that it would breed litigation and deprive the real parties at interest of their right to compromise and settle their controversies.

Therefore, the court of civil appeals erred in holding that Patrick and Robert Turcotte are persons interested in the Sarita K. East estate and, as such, entitled to contest the 1960 will. The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

POPE, J., dissents in an opinion in which CHADICK, J., joins.

POPE, Justice, dissenting.

I respectfully dissent. I do not agree with that part of this court's opinion which denies standing to Patrick and Robert Turcotte in their attack upon Mrs. Sarita East's 1960 will and its codicils. In my judgment the Turcottes have the same standing as their assignors, Marie Walker and Robert C. Putegnat. Walker and Putegnat are the heris of Mrs. East, and they also have an interest as devisees under Mrs. East's earlier 1948 will, which might become operative if the 1960 will were invalidated. The majority recognizes that Marie Walker and Robert Putegnat had an interest and standing, but in some mysterious manner, a part of their interest and standing vanished by their assignment to the Turcottes.

Mrs. Sarita K. East executed a will in 1948, and in 1960 she made a new will. A number of codicils were later added to the 1960 will. After Mrs. East died in 1961, some 120 persons set about to prove that the 1960 will and the codicils were void because Christopher Gregory, also known as Brother Leo, had overreached Mrs. East by undue influence and fraud. That contest was tried in the probate court of Kenedy County which rendered a judgment that the 1960 will was void and which admitted the 1948 will to probate. There was an appeal to the district court. *See Alice National Bank v. Corpus Christi Bank & Trust,* 431 S.W.2d 611 (Tex.Civ.App.—Corpus Christi 1968), *aff'd,* 444 S.W.2d 632 (Tex.1969).

All of the parties who originally urged the invalidity of the 1960 will have now, we are told, made settlements in the vast estate—all, that is, except Patrick and Robert Turcotte. The majority opinion says that the Turcottes should not now be permitted to assert their rights or test the validity of the 1960 will, because it would be "inequitable and unjust to allow Patrick and Robert Turcotte to assert standing as interested parties." The assignments that they own have not been set aside or voided by any legal proceeding and the majority opinion confirms their validity. In my opinion, the Turcottes have standing, and it is inequitable and unjust to deny them their day in court to make proof that Mrs. East was overreached when she made the 1960 will.

The Turcottes assert their standing on two independent bases, either of which en-

titles them to contest the 1960 will. They first assert that they are the sons of Edgar Turcotte who was a beneficiary under Mrs. East's 1960 will. Edgar Turcotte received substantial benefits under the 1960 will, but the Turcottes say that he did so without full knowledge of the undue influence and fraud of Father Leo, and also that Edgar Turcotte did not know that he was granted even greater benefits under the earlier 1948 will and its codicil. Edgar Turcotte died and his two sons then received by devise a part of what Edgar had received under Mrs. East's 1960 will. Patrick and Robert Turcotte urge that in 1973 when this same issue was before the court of civil appeals that the court ruled that Edgar Turcotte was not estopped unless there were pleadings and proof that he received the benefits of the 1960 will with knowledge of the facts. 499 S.W.2d 705, 712–15 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). The court of civil appeals at that time ruled:

> There is neither pleading nor evidence to support the findings that Edgar Turcotte, at the time he accepted benefits under the contested will, had full knowledge of the lack of testamentary capacity of Mrs. East when she executed the will.

Patrick and Robert advance a second basis to establish their standing to attack the 1960 will. They own an interest entirely independent of their claims as children of Edgar Turcotte, one of the beneficiaries of the 1960 will. Robert C. Putegnat and his sister Marie Walker were second cousins of Mrs. East and as such were her heirs at law. They were also named as beneficiaries by a codicil to Mrs. East's 1948 will. They were not named as beneficiaries under the 1960 will. Putegnat and Walker contested the 1960 will, and there has at no time been any pleading or contention that those parties lacked standing to sue to strike down the 1960 will.

Putegnat and Walker sold a part of their valid and nonestopped claim to Patrick and Robert Turcotte by transactions which the majority opinion upholds as valid. In other words, Patrick and Robert Turcotte lawfully bought the interests of Putegnat and

Walker and the majority upholds the lawfulness of the purchase. We thus have the situation in which Patrick and Robert Turcotte bought an unestopped interest; however, this court denied them the right to assert that unestopped interest.

Patrick and Robert Turcottes' standing, provided they factually proved their acquisition of the interests, was decided in the earlier appeal of this case. Patrick and Robert Turcotte rely upon these express holdings by the court of civil appeals on the former appeal about standing: Patrick Turcotte had the legal right to purchase from other heirs an interest in Mrs. East's estate; Patrick and Robert Turcotte had the right to plead their interest based on (a) what they acquired by devise under the will of their father Edgar Turcotte, and (b) that which they purchased from Marie Walker; if either title so pleaded was proved, they were entitled to prosecute the will contest; an estoppel against Robert Turcotte by reason of his devise under his father's will does not cut off his interest acquired by purchase from Marie Walker; neither Patrick nor Robert Turcotte were personally estopped from contesting Mrs. East's will, because they were not named as beneficiaries in her will, "They having accepted no benefits under Mrs. East's will  . . . ." *Turcotte v. Trevino*, 499 S.W.2d 705, 721–22.

The majority now rejects all of those earlier holdings, but writes at length to excuse and justify its disregard of the earlier 1973 opinion. The point before the court of civil appeals in 1973 and this court on application for writ of error in that former case, was whether the Turcottes had standing as the assignee of a part of an unestopped claim of Marie Walker. It is correct that the court of civil appeals recognized differences in the records of the two appeals of these same parties. But the court of civil appeals, writing on this second appeal, recognized the identity of the parties and problem, and it applied the same rule in the second appeal that it did in the first one. Whatever may be the other differences in this and the earlier records on appeal, the records are the same concerning

the right of the Turcottes to assert rights under their valid assignments.

Lest there be any question of the sameness of the issue and parties in the earlier [1] and the present [2] appeal, we should examine the verbatim holdings in the two opinions written by the same judge of the same court about the same point. Five years ago the court of civil appeals relied upon *Dickson v. Dickson,* 5 S.W.2d 744 (Tex.Com.App.

1. *Turcotte v. Trevino,* 499 S.W.2d 705, 721–22 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.):

It is without dispute in the record that Marie Walker is an heir at law of Mrs. East as well as one of the beneficiaries entitled to share in a $20,000.00 legacy bequeathed by the 1948 will. As such, she holds the necessary justiciable interest in the East estate to maintain *the will contest, and did, in fact, do so.*

It is settled law in this State that the heirs, devisees and legatees of a decedent may validly assign all or any part of their rights and interests in a decedent's estate to another person. *Morris v. Halbert,* 36 Tex. 19 (1891) [sic]; *Geraghty v. Randals,* 224 S.W.2d 327 (Tex. Civ.App.—Waco 1949, n. w. h.); 20 Tex. Jur.2d, Descent and Distribution, § 33, p. 116. An assignee of an heir at law or of a devisee or legatee of a decedent has a right to prosecute a will contest to set aside a will which prejudicially affects the rights or properties transferred by the assignment. *Dickson v. Dickson,* 5 S.W.2d 744 (Tex.Com.App.1938) [sic].

The rule is set forth in 23 Am.Jur.2d, Descent and Distribution, § 36, p. 782, as follows:

". . . Estoppels, where operating against the ancestor, do not operate against his heir as to property not inherited from the ancestor but acquired from an independent source. Hence, [sic] an heir is not bound by such an estoppel with respect to property taken by purchase, or devise, or inheritance [sic] from one other than the particular ancestor".

In *Abrams v. Ross' Estate,* 250 S.W. 1019 (Tex.Com.App.1923), the will contestant had acquired two rights, through different sources, to maintain a will contest. He sued on the basis of both rights. The court held that he was entitled to maintain the will contest if either right be valid, saying:

". . . They were not required to rely upon one or the other. If either title pleaded showed in them any interest in the estate of Sarah Ross, in the absence of the probate of her will, they were entitled to contest such probate. . . ."

2. *Turcotte v. Trevino,* 544 S.W.2d 463, 474 (Tex.Civ.App.—Corpus Christi 1976):

It is settled law in this State that the heirs, devisees and legatees of a decedent may validly assign all or any part of their rights and interests in a decedent's estate to another person. *Morris v. Halbert,* 36 Tex. 19 (1871); *Geraghty v. Randals,* 224 S.W.2d 327 (Tex.Civ.App.—Waco 1949, no writ); 20 Tex.Jur.2d, Descent and Distribution, § 33. An assignee of an heir at law, devisee or legatee of a decedent has a legal right to maintain a will contest to set aside a will which prejudicially affects the properties assigned or conveyed to him by the assignment under which he claims. *Dickson v. Dickson,* 5 S.W.2d 744 (Tex.Comm'n App.1928).

\* \* \* \* \* \* \*

The rule is set forth in 23 Am.Jur.2d, Descent and Distribution, § 36, p. 782, as follows:

". . . Estoppels, where operating against the ancestor, do not operate against his heir as to property not inherited from the ancestor, [sic] but acquired from an independent source. Hence an heir is not bound by such an estoppel with respect to property taken by purchase, or devise, or inheritance, from one other than the particular ancestor".

A will contestant who has acquired rights through different sources to property owned by the decedent and disposed of by will may file a suit to contest a will. Such contestant is entitled to maintain the will contest if either right be valid, and he is not required to rely upon one or the other. *Abrams v. Ross' Estate,* 250 S.W. 1019 (Tex.Comm'n App.1923); *Turcotte v. Trevino,* supra.

1928, judgmt adopted); *Abrams v. Ross' Estate,* 250 S.W. 1019 (Tex.Com.App.1923, judgmt adopted), and 23 Am.Jur.2d, *Descent and Distribution,* § 36 (1965). The court of civil appeals in this case believed that it was applying the law of the case, because it cited the 1973 case of *Turcotte v. Trevino.*

Patrick and Robert Turcotte have now done precisely what they were told they needed to do by the 1973 remand of this case. They returned to the trial court and made the factual proof of their standing. They now learn that the retrial upon the remand was an empty and useless effort. As stated by the majority opinion, this court has the power to ignore the law of the case, but it is unfortunate that we have chosen to do so after so long a delay which we ordered, and after the waste of so much time and money upon a retrial that really should not have been conducted. The majority has found no better reasons than those urged in the former appeal for its change of mind, and it cites no Texas authority for its rule that, in this instance, it would be "inequitable and unjust" to allow Patrick and Robert Turcotte to conduct a trial which would determine which will in truth was Mrs. East's last will. That issue will now never be determined. In my opinion this is a textbook example for the application of the law of the case. *Kendall & Harcourt v. Mather,* 48 Tex. 585, 597–98 (1878); *Wood v. Wheeler,* 9 Tex. 127 (1852).

I agree with the opinion of the court of civil appeals, and I would refuse the writ, no reversible error, and permit Patrick and Robert Turcotte, who have a valid assignment from unestopped heirs and devisees, to make their proof about the testamentary capacity of Mrs. East and on the issues of fraud, undue influence and duress. I do not believe that the property rights which Patrick and Robert purchased should be deemed expendable.

CHADICK, J., joins in this dissent.