IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0666
════════════
 
Loram Maintenance of Way, 
Inc.,
Petitioner,
 
v.
 
David Ianni,
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Eighth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 
29, 2005
 
 
Justice Green delivered the opinion of 
the Court.
 
Justice O’Neill filed a concurring 
opinion, in which Chief Justice 
Jefferson joined.
 
 
In general, 
an employer owes no duty to protect the public from the wrongful acts of its 
off-duty employees that are committed off the work site unless the employer 
exercises control over the employees’ off-duty activities that cause harm. 
See Otis Eng’g Corp. v. Clark, 668 S.W.2d 307, 309, 311 (Tex. 1983). 
Here, we are asked to decide whether an employer owes a duty to protect the 
public from an employee’s wrongful off-duty conduct, even though the employer 
exercised no control over the employee’s off-duty activities, because the 
employer knew its employee was drug-impaired and had threatened violence to 
others. We conclude that the employer owes no such duty.
I. Factual Background
Loram 
Maintenance of Way, Inc. refurbishes railroad tracks by utilizing a very large, 
complex machine that rides along the rails while grinding the rails back into 
their proper profile. Because of the nature of the work, Loram’s employees are 
constantly on the road, working twelve-hour shifts. They travel with their 
families, staying in motels paid for by Loram.
Roger Tingle 
worked for Loram and traveled with his wife. Tingle was also an enthusiastic 
participant in an illegal drug culture that was allowed to flourish among the 
employees at Loram. He had been using methamphetamine on and off the job for ten 
months before the incident that led to this lawsuit. He testified that he only 
took the drug for recreational purposes, or to stay awake during work after 
partying,[1] but there was also evidence that 
Tingle’s supervisor and co‑workers used the drug, and that Tingle’s supervisor 
had given Tingle time off to purchase more.
Because of 
his heavy methamphetamine use, Tingle became moody and mentally unstable. In the 
weeks and days leading up to the incident, Tingle was seen using the drug at 
work, and he threatened one of his wife’s friends with a knife. Those incidents 
were reported to Loram management.
On the day of 
the incident, while at work, Tingle reportedly spoke of attacking his wife. 
After their shift ended, he and his co-workers were driven back to the motel 
where they were housed with their families. Later that day, Tingle got into an 
argument with his wife, forced her into their car, and began to drive out of the 
motel parking lot. When he threatened his wife with a gun, she jumped out of the 
car screaming for help. David Ianni, an El Paso police officer, was leaving a 
nearby restaurant when he witnessed the altercation and went to her aid. When 
Tingle got out of his car to pursue his wife, Ianni tried to intervene. Tingle 
then shot Ianni, seriously injuring him. 
Ianni sued 
Loram, claiming it was negligent in retaining an incompetent, unfit, or 
dangerous employee; in failing to properly control and supervise Tingle; and in 
encouraging drug use. He also claimed Loram aided and abetted Tingle’s drug use. 
The jury found Loram’s negligence proximately caused Ianni’s injuries and that 
Loram’s supervisors were vice principals. Ianni was awarded $800,000 in actual 
damages and $500,000 in punitive damages. The Eighth Court of Appeals affirmed 
the trial court’s judgment, holding that Loram owed Ianni a duty because of its 
negligent exercise of control over Tingle while he was incapacitated. 141 S.W.3d 
722, 729 (Tex. App.–El Paso 2004, pet. granted) (citing Otis Eng’g, 668 
S.W.2d at 311). Loram contends it owed no duty to Ianni because, even if it was 
negligent in supervising Tingle while he was on duty, it did not exercise any 
control over Tingle’s wrongful activities while he was off duty. We granted 
Loram’s petition for review to decide the duty issue. 48 Tex. Sup. Ct. J. 1042 (Sept. 16, 2005). 

II. Law of the Case
We first 
address Ianni’s argument that Loram’s duty issue should not be reviewed in this 
appeal because it was decided in a previous appeal and is now the “law of the 
case.” See Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986). Loram 
initially obtained a summary judgment that it owed no duty to Ianni. Ianni 
appealed, and the court of appeals held that the summary judgment in Loram’s 
favor was improper on the duty issue and remanded the case to the trial court. 
Ianni v. Loram Maint. of Way, Inc., 16 S.W.3d 508, 527 (Tex. App.–El Paso 
2000, pet. denied) (“Ianni I”). Loram then petitioned for review in this 
Court, which we denied. 43 Tex. Sup. Ct. 
J. 1213 (Sept. 14, 2000). Our denial of the petition for review in 
Ianni I does not preclude us from reviewing the duty issue now.
“The ‘law of 
the case’ doctrine is defined as that principle under which questions of law 
decided on appeal to a court of last resort will govern the case throughout its 
subsequent stages.” Hudson, 711 S.W.2d at 630. We have held that 
declining to review a case is not evidence that the Court agrees with the law as 
decided by the court of appeals. See Trevino v. Turcotte, 564 S.W.2d 682, 
685 (Tex. 1978) (holding that a court of appeals’ conclusion was not binding 
under the “law of the case” doctrine when the petitioner’s first writ of error 
was denied by this Court as “writ refused, no reversible error”); City of 
Houston v. Jackson, __ S.W.3d ___, ___ (Tex. 2006) (holding that even though 
a previous petition for review on the matter was dismissed by this Court, the 
Court could review the issue in a later petition to this Court after remand). 
The denial or dismissal of a petition does not give any indication of this 
Court’s decision on the merits of the issue. See Tex. R. App. P. 56.1(b)(1); Matthews 
Constr. Co., Inc. v. Rosen, 796 S.W.2d 692, 694 n.2 (Tex. 1990). Since the 
“law of the case” doctrine is inapplicable, we will address Loram’s complaint 
that it owed no duty.
III. Employer Liability for Employee’s Off-Duty Conduct
“Under Texas 
law, in the absence of a relationship between the parties giving rise to the 
right of control, one person is under no legal duty to control the conduct of 
another, even if there exists the practical ability to do so.” Graff v. 
Beard, 858 S.W.2d 918, 920 (Tex. 1993). The employer-employee relationship 
can give rise to this kind of duty. Greater Houston Transp. Co. v. 
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). But it is a narrow duty; 
typically an “employer is liable only for the off-duty torts of his employees 
which are committed on the employer’s premises or with the employer’s chattels.” 
Otis Eng’g, 668 S.W.2d at 309.[2] In addition, “when, because of an 
employee’s incapacity, an employer exercises control over the employee, the 
employer has a duty to take such action as a reasonably prudent employer under 
the same or similar circumstances would take to prevent the employee from 
causing an unreasonable risk of harm to others.” Id. at 311 (citing 
without adopting Restatement (Second) of 
Torts § 319 (1965) (“One who takes charge of a third person whom he 
knows or should know to be likely to cause bodily harm to others if not 
controlled is under a duty to exercise reasonable care to control the third 
person to prevent him from doing such harm.”)); see Greater Houston Transp. 
Co., 801 S.W.2d at 526 (“We imposed the duty upon the employer [in Otis 
Engineering], not because of the mere knowledge of the intoxication, but 
because of the employer’s negligent exercise of control over the 
employee.”).[3]
Therefore, 
simply knowing that an employee is intoxicated or incapacitated is not enough 
for a duty to arise. Otis Eng’g, 668 S.W.2d at 309; Greater Houston 
Transp. Co., 801 S.W.2d at 526. Rather, the employer must affirmatively 
exercise control over the incapacitated employee. See Otis Eng’g, 668 
S.W.2d at 309, 311. Once affirmative action has been taken for the benefit of 
another, the employer has a duty to act with reasonable care, even if the 
employer initially had no duty to act. Id.; see also Colonial Sav. 
Ass’n v. Taylor, 544 S.W.2d 116, 119-20 (Tex. 1976) (“[O]ne who voluntarily 
undertakes an affirmative course of action for the benefit of another has a duty 
to exercise reasonable care that the other’s person or property will not be 
injured thereby.”). Thus, while an employer owes no duty to act to control the 
conduct of an impaired off-duty employee, if the employer does decide to act, 
its duty is “to avoid any affirmative act which might worsen the situation.” 
Otis Eng’g, 668 S.W.2d at 309.
In Otis 
Engineering, the employer knew that the employee was intoxicated and sent 
him home because of his intoxication. Id. at 308. While driving home, the 
employee caused a fatal accident. Id. This Court held that the employer 
owed a duty to third persons, not because it knew its employee was intoxicated, 
but because the employer decided to deal with its employee’s intoxication by 
exercising affirmative control, including suggesting that he drive home. 
Id. at 311. In other words, when the employer acted, it made the 
situation worse.
In this case, 
the shooting incident did not occur until at least an hour after Tingle was 
already off duty and at the motel. There is no evidence that Loram was 
exercising any control over Tingle at that time because of his agitated mental 
state or for any other reason. Instead, the evidence shows only that Loram 
employees knew Tingle was agitated when he was driven to the motel when his 
shift ended.[4] And as we have stated, mere knowledge 
of an impaired condition is not sufficient to impose a duty. Otis Eng’g, 
668 S.W.2d at 309; Greater Houston Transp. Co., 801 S.W.2d at 526.
Ianni 
additionally argues that, even if Loram did not exercise affirmative control 
over Tingle in response to his agitated mental state, it owed a duty to Ianni 
under our holding in Texas Home Management v. Peavy, 89 S.W.3d 30 (Tex. 
2002). In Peavy, we held that a facility for mentally-impaired residents, 
which was required to supervise and control the comings and goings of those 
state-ordered residents, could have a duty to exercise proper control over its 
residents. See id. at 32, 39. However, duties involving responsibility 
for another’s actions are based on a number of factors, including the kind of 
relationship between the parties. Id. at 33-34. The relationship in 
Peavy was one where the facility had continuous, supervisory control over 
a mentally-impaired resident because the state had ordered him to live there. 
Id. at 32, 34. That is significantly different from the relationship 
between employers and employees, where supervision and control are usually based 
on a limited work task or period. The duty standard in Peavy does not 
apply to this case.
* 
 *  *
Based on the 
facts surrounding the occurrence in question, we conclude that Loram owed no 
duty to Ianni with respect to Tingle’s off-duty conduct.[5] Because Loram owed no duty, we need 
not reach the remaining issues. We Reverse the court of appeals’ judgment 
against Loram and Render a 
take-nothing judgment in Loram’s favor.
 
_____________________________
PAUL W. 
GREEN
JUSTICE
 
OPINION DELIVERED: June 30, 2006 

 
 






[1] Tingle and other members of the crew used 
methamphetamine to “party” and would not sleep for days. Consequently, they 
would have to take even more methamphetamine to be awake enough to work. 


[2] Ianni does not contend that the shooting incident 
occurred at a site controlled by Loram or that Tingle was using company 
equipment at the time.

[3] We also note that section 317 of the Restatement says 
that an off-duty employee must be using company equipment or property at the 
time of the incident for the employer to have a duty to third parties for the 
employee’s conduct. See Restatement (Second) of Torts 
§ 317 (1965) (stating that an employer has a duty to exercise 
reasonable care to keep an employee from causing an injury to others if the 
employee is off duty but using company equipment or on company property at the 
time of the incident). 

[4] It is not clear whether Tingle’s supervisor was aware 
of his condition at this time or whether the supervisor’s knowledge would be 
sufficient to bind the company. But for purposes of this analysis, we assume 
without deciding both that the supervisor knew and that his knowledge was 
binding on the company.

[5] “[T]he existence of duty is a question of law for the 
court to decide from the facts surrounding the occurrence in question.” 
Greater Houston Transp. Co., 801 S.W.2d at 
525.